IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DERRICK HARRIS,** PLAINTIFF

V. NO. 4:06CV08-P-B

**DELMER MAXWELL, et al.,** DEFENDANTS

## OPINION

Presently before the court is the Defendants' motion for summary judgment. Upon due consideration, the court finds that the motion should be granted.

*A. Factual Background*

Plaintiff, a prisoner proceeding *pro se*, filed this § 1983 action on January 17, 2006, for denial/delay of medical care. In November of 2003, Plaintiff suffered a broken bone in his left heel while being house at the Mississippi State Penitentiary. Plaintiff alleges that after his transfer from the Mississippi State Penitentiary to Delta Correctional Facility, he was denied medical attention for his injury. Plaintiff's cast was removed in April of 2004. One month later, in May of 2004, medical records indicate that Plaintiff was still slowly recovering from the orthopedic break. In response to the summary judgment motion, Plaintiff admits that he was "examined regularly by medical staff" and he attempts to characterize his claim as one for delayed medical attention rather than a clear denial.

Defendants argue that summary judgment is proper because Plaintiff received adequate medical attention and if he did not, Plaintiff has failed to show that the Defendants were "deliberately indifferent" to his medical needs.

## B. Standard of Review

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

## C. Denial and Delay of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial or delay of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs

of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

Based on the record in this case, including affidavits and over 100 pages of medical records relating to the treatment of Plaintiff's foot, and Plaintiff's own concession that he was seen by medical staff routinely, it is clear that Plaintiff has not been denied medical care. Therefore, Plaintiff's claim of denial of medical attention is plainly without merit and shall be summarily dismissed.

If Plaintiff's complaint concerns delayed medical attention rather than a clear denial of medical attention, he must demonstrate that Defendants were deliberately indifferent and that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation.

3

*Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). Generously assuming that the Defendants were deliberately indifferent[1] and before determining whether or not the Plaintiff has suffered "substantial harm," the court must first find that there has been a "delay."

Plaintiff insists that his medical treatment was callously delayed by the Defendants. Specifically, he contends that Defendants delayed his access to crutches, an orthopedic boot, and a consult with an outside specialist in direct contradiction of Doctor Johnson's repeated orders. In support of his contention, Plaintiff points to medical records summarizing the events of each occasion he receive medical attention.

The chronology begins on May, 24, 2004, where the order stated, Plaintiff should be "fit with another orthopedic shoe." The notes accompanying this entry indicate that Plaintiff needs "at least more physical therapy and/or orthopedic consult *but he only wants another shoe*." (*Emphasis added*). The next entry is on June 30, 2004, and noted that the shoe was received. The documentation showed that Plaintiff was seen on July 13, 2004, and September 1, 2004, and treated for pain in his foot. On October 5, 2004, Plaintiff was again seen for his injury, the notes documenting this consultation stated that Plaintiff "was getting physical therapy but is unable to get it here," and suggested that he be "returned to Parchman where he can get physical therapy." There was not another entry until December 7, 2004, when it was noted that his problem was "worse [and] shoe is torn up." Comparative x-rays were ordered and produced the following day. A summary of the findings provided that a "CT scan is recommended." On December 29, 2004, it is noted that a

---

[1] For the sake of argument, the court merely assumes, contrary to the overwhelming weight of evidence, that Defendants were deliberately indifferent toward Plaintiff.

"CT scan" was scheduled and transport papers prepared. January 3, 2005, Plaintiff was taken to a hospital for the procedure where it was determined that his heel was still fractured. After this revelation, Plaintiff's fracture was regularly monitored by prison medical staff as well as outside sources. The fracture appears to have been healed by April 5, 2006.

Arguably there was a delay between the time Plaintiff was transferred to Delta Correctional Facility and the day upon which it was discovered his orthopedic fracture had not completely healed.[2] But there is no indication that the Defendants were intentionally delaying Plaintiff's care or diagnosis. The Defendants' actions in the intervening months certainly cannot be catagorize as indifferent. To the contrary, Plaintiff admittedly received regular examinations and treatment for his pain. Furthermore, having reviewed all of the medical records, the court can find no direct order for an outside consultation that was completely ignored. The treating physician ordered a CT scan on or about December 8, 2004, which was ultimately scheduled for January 3, 2005. Though by literal definition the 26 days between the order and procedure is a delay, by constitutional ruler waiting that length of time to see a medical specialist for a non-life threatening injury does not amount to a depravation of rights.[3] *See Gibson v. Shabazz*, No. Civ. A. H-04-3405, 2005 WL 151396 at *13 (S.D. Tex. June 23, 2005) (noting that claims for delayed medical treatment typically involve "life-threatening situations."*); see also Buckley v. Correctional Medical Services, Inc.*, 125 Fed. Appx. 98, 2005 WL 600651 (8th Cir. 2005) (20 month delay in scheduling elbow surgery after recommended did not state a 1983 claim delay was due to misunderstanding, non-emergency and

---

[2] Plaintiff was transferred in May of 2004 and in January of 2005– approximately a 7 month delay–it was determined that his fracture had not healed.

[3] Indeed, it is not uncommon for those who are not incarcerated to wait for substantially longer periods of time for specialized medical treatment.

5

not detrimental). Notwithstanding the delay, Plaintiff has failed to show, or even allege, how any particular Defendant interfered with or impeded his treatment. Rather, in conclusory fashion he insists that the Defendants were deliberately indifferent in doing so.

In his response to the summary judgment motion, Plaintiff stated, "I needed outside medical attention which I was unable to get due to the *negligent* acts of Delta Correctional Facility's medical staff." (*Emphasis added*). The medical records in this case, simply do not suggest–even with liberal reading–that Plaintiff's access to outside medical care was thwarted by the Defendants. The evidence indicates quite the opposite. Once a doctor determined that a CT scan was warranted, an appointment was made and the Plaintiff was transported for treatment. According to all the medical records and given Plaintiff's frequent contact with the medical staff at Delta Correctional Facility, any purported actions that may have delayed Plaintiff's access to a specialist would necessarily be negligent.[4] Although, inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (citations omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if the treatment was negligently administered); *see also Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533 at *2 (6th Cir. Jan. 28, 1999) (plaintiff did not state a claim where he received treatment for a broken hand including x-rays).

Though the Plaintiff is understandably dissatisfied with the treatment he received, the indisputable evidence in this case simply does not support a claim for 1983 relief. In legal terms,

---

[4] Plaintiff does not offer any theory or evidence regarding any Defendants' alleged culpable action.

a 1983 claim will not lie because Plaintiff disagrees with the course, method and timing of medical treatment. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) (disagreement with the type or timing of medical services provided cannot support a 1983 claim); *see also Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

*F. Conclusion*

For the foregoing reasons, Plaintiff has failed to demonstrate the existence of a triable issue of material fact. Although the court is sympathetic to his plight, summary judgment shall be granted in favor of the Defendants and Plaintiff's claims shall be dismissed.

A separate order will issue this day in accordance with this opinion.

This the 30th day of March, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE